**Glen HUMPHREY, Jr., d/b/a B & T Oil Company, Appellant,**

**v.**

**Sam D. SEALE, III, Lillian Seale Biddison, W.M. Biddison, G.F. Rhodes and J.W. Raisanen, Appellees.**

**No. 13–85–505–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 29, 1986.

Rehearing Denied Sept. 30, 1986.

Bob Spann, Corpus Christi, for appellant.

Tom Garner, Jr., Port Lavaca, Robert C. Wolter, Corpus Christi, for appellees.

Before DORSEY, UTTER and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

This is an appeal of a partial summary judgment in a declaratory judgment suit in which appellant sought to determine his rights under a partial assignment of an oil and gas lease. The trial court severed appellant's cause of action against the lessors/landowners [1] from the cause against the assignors [2] and granted summary judgment for the landowners declaring that the lease had terminated. We reverse the severance and partial summary judgment of the trial court and remand the cause for a trial on the merits.

The summary judgment evidence establishes that Sam D. Seale and the Biddisons executed an oil and gas lease covering four hundred acres in Jackson County on November 24, 1972. Rhodes and Raisanen acquired an overriding royalty interest in the lease. On June 22, 1979, a partial assignment covering "William D. Johnson No. 1, No. 4, and No. 5, Sam D. Seale Wells," was executed to R.C. Hagens, as-

---

1. Sam D. Seale, III, Lillian Seale Biddison, W.M. Biddison, G.F. Rhodes, and J.W. Raisanen [appellees].

2. R.C. Hagens, J.K. Boester, H.F. Boester, and Everett Lawley, Jr. [not appellees herein, referred to hereinafter as "Hagens defendants"].

signee. Subsequently, Hagens assigned interests to J.K. Boester, H.F. Boester, and Everett Lawley, Jr. On April 30, 1982, the Hagens defendants assigned their interest in the lease to appellant.

When appellant attempted to begin reworking Wells No. 1 and No. 5, he was informed by Seale that due to lack of production, reworking or royalties, the lease had expired as to Wells No. 1 and No. 5. Well No. 4, however, continued to produce, until appellant ceased operations on the well contemporaneous with the filing of this action.

Appellant brought suit for declaratory judgment to determine the ownership rights in the lease. Appellant sought rescission of the sale between himself and the Hagens defendants, a refund of all sums paid to the Hagens defendants, and out-of-pocket expenses in maintaining Well No. 4. Appellant also alleged that Seale wrongfully excluded him from attempting to rework Wells No. 1 and No. 5, and sought judgment that he be permitted to reenter the premises or be awarded monetary damages against Seale. Appellee Seale, responded that there was no cause of action because there was no right to rework Wells No. 1 and No. 5 because the lease had expired as to the 40–acres surrounding those wells. Appellees filed a cross-action against appellant asking the court to declare that the lease had terminated as to Wells No. 1 and No. 5 due to lack of production and as to Well No. 4 due to appellant's abandonment.

Appellees filed a motion for severance and summary judgment as to appellant's cause of action and their cross-action. After reviewing the summary judgment evidence including the lease and partial assignments, admissions, interrogatories, and sworn affidavits, the trial court concluded that no genuine issue of material fact existed as to the cause of action against Seale, et al., and that the lease dated November 24, 1972, had terminated. The trial court severed the actions involving appellees from the cause asserted against the Ha-

gens defendants and granted appellees' motion for summary judgment.

In his first five points of error, appellant challenges the granting of the severance and the partial summary judgment declaring the lease terminated.

The oil, gas, and mineral lease was for a primary term of six months and for as long thereafter as oil or gas was produced. Paragraph 19 contains the language that is determinative of the dispute. Paragraph 19 provides:

> That after the discovery of oil in paying quantities ... Lessee ... shall develop the acreage retained ... providing further, however, that within one hundred eighty (180) days from the date the first oil well is completed on the leased premises, said Lessee, its successors or assigns, shall commence a second well on the premises herein, then in that event, the Lessee, its successors and assigns, shall surrender and release all undeveloped acreage to the Lessors herein, retaining forty (40) acres designated as a well block around such producing well, and said well block designation shall be filed of record immediately after said block has been designated by Lessee....

The appellees take the position that 40 acres was retained around the well only while a well produced, and upon the cessation of production of a particular well, the 40 acres surrounding that well reverted to the landowner and was no longer subject to the Oil and Gas Lease. Accordingly, appellees submitted an affidavit by Sam D. Seale, III, in support of their motion for summary judgment that recited that a total of five wells were either drilled or reentered under the lease; that all of the land subject to the lease was released except three 40–acre tracts, one surrounding each of Wells 1, 4 and 5. The affidavit addressed the status of Wells 1, 4, and 5, in that No. 1 had not produced for six months prior to April 30, 1982, and had not produced since April 30, 1982, until the making of the affidavit. Well No. 5 had last produced prior to the assignment to Hagens, and although Hagens had attempted to rework

Well No. 5, he had been unsuccessful. Well No. 4, however, had produced oil until 1983. There is no contention by the appellees that the entire lease had expired due to a lapse in production prior to April 20, 1983, when Well No. 4 was shut down.

It is appellee's position that the 40–acre tracts surrounding Wells No. 1 and 5 reverted to the lessor and were not subject to the Oil and Gas Lease at the time the plaintiff came upon the land to rework Wells No. 1 and 5. Appellees argue that Seale was correct when he notified appellants that the lease as to Wells No. 1 and 5 had terminated, and he is not, therefore, liable for wrongfully excluding appellants from Wells No. 1 and 5. Appellees further argue that the trial court was correct in decreeing that the lease had terminated because the summary judgment evidence is uncontroverted that all production from the leased premises ceased on or about April 20, 1983, when appellants shut down Well No. 4, the sole producing well on the premises.

We disagree. Absent the provisions of Paragraph 19, the lease would remain in effect over the entire leased premises during the term of the lease; that is, for as long as oil or gas was produced in paying quantities after the expiration of the primary term. Production on any portion of the leased premises would hold the entirety. *Mathews v. Sun Oil Co.,* 425 S.W.2d 330, 333 (Tex.1968). In reviewing Paragraph 19, we find an obligation of lessee, or its assigns, to release by recordable instrument within 180 days from the completion of the first oil well, all undeveloped acreage to lessor, retaining 40 acres around each producing well. The affidavit of Sam D. Seale, III, is unambiguous. It states that five wells were drilled or reentered under the lease and each held a designated unit of 40 acres. Mr. Seale states, "The remaining acreage, including the designated acreage around the No. 2 and No. 3 wells, was released prior to the Plaintiff B & T Oil Company or Defendant R.C. Hagens, et al., ever coming into the chain of assignment by Lessees." Therefore, after the release was made in accordance with Paragraph 19, three 40–acre tracts remained under lease, one around each of the three remaining Wells No. 1, 4, and 5. Paragraph 19 does not require the lessee to relinquish additional acreage from the lease after the initial release is accomplished "within 180 days of the first oil well." As all three of the 40–acre tracts are under the same lease and lease terms, production on one will keep the lease in effect for all. *Mathews v. Sun Oil Co.,* 425 S.W.2d at 333.

If the parties to the lease had wished to provide for a continual relinquishment of nonproducing acreage, so that a 40–acre tract would no longer be subject to the lease once production had ceased on that particular 40–acre tract, it would have been simple to include such language. However, in the absence of such a provision, the general rule that production any where on the leased premises will maintain the lease prevails.

The controlling question in a motion for summary judgment is whether the summary judgment proof establishes as a matter of law that there is no fact issue as to one or more of the essential elements of the plaintiff's cause of action. *Zeller v. University Savings Association,* 580 S.W.2d 658 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ); *Garcia v. Ray,* 556 S.W.2d 870 (Tex.Civ.App.—Corpus Christi 1977, writ dism'd); TEX.R.CIV.P. 166–A. In determining if a party is entitled to summary judgment and in determining if there is a disputed material fact issue, the evidence is viewed in the light most favorable to the nonmovant, and the evidence which tends to support the position of the nonmovant is accepted as true. *MMP, Ltd. v. Jones,* 710 S.W.2d 59 (Tex.1986); *Wilcox v. St. Mary's University of San Antonio, Inc.,* 531 S.W.2d 589 (Tex.1975). The summary judgment evidence establishes that there had been no production on Well No. 1 or Well No. 5 for at least sixty days prior to appellant's attempt to rework said wells, at which time he was informed by Seale that he had no right to do so. However, the evidence also establishes that there was

production on Well No. 4 at the time of the appellant's purchase of the partial assignment which continued until April 20, 1983, the day after suit was filed, at which time appellant closed in Well No. 4.

Appellees urged in their motion for summary judgment that appellant's alleged abandonment of Well No. 4 acted to terminate the lease as to Well No. 4 and cause all rights to vest in appellees. However, "repudiation of a lease by the lessor relieves the lessee of any obligation to conduct any operations on the land in order to maintain the lease in force pending the judicial controversy between lessee and lessor over the validity of the lease." *Tar Heel Energy Corp. v. Menking*, 621 S.W.2d 450, 451 (Tex.Civ.App.—Corpus Christi 1981, no writ), *citing Kothmann v. Boley*, 158 Tex. 56, 308 S.W.2d 1 (1957); *Casey v. Western Oil and Gas, Inc.*, 611 S.W.2d 676 (Tex.Civ.App.—Eastland 1980), writ ref'd n.r.e.); *Morgan v. Fox*, 536 S.W.2d 644 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). There is evidence that appellant shut down the No. 4 well as a result of the high cost of operating that sole well after the appellee Seale challenged the status of the lease as to Wells No. 1 and 5. The repudiation of the lease as to Wells 1 and 5 by the appellee Seale relieved the appellant of an obligation to develop or further maintain the lease until the issue was resolved. *Mathews v. Sun Oil Co.*, 425 S.W.2d at 333; *NRG Exploration, Inc. v. Rauch*, 671 S.W.2d 649 (Tex.App.—Austin 1984, writ ref'd n.r.e.).

Summary judgment evidence has raised the issue of repudiation of the lease as to Wells 1 and 5. Because this fact issue exists, the summary judgment was improper.

Because the resolution of the material fact issue as to whether the production on Well No. 4 held the lease as to Wells No. 1 and No. 5 will dispose of the causes of action against appellees and the Hagens defendants, as well as appellees' cross-action against appellant, we find the appellees to be necessary parties to appellant's declaratory action suit. TEX.R.CIV.P. 39. The trial court erred in granting severance.

Appellant's first five points of error are sustained.

We need not address appellant's remaining points of error. TEX.R.CIV.P. 451.

The judgment of the trial court is reversed and the cause is remanded for trial.