Opinion issued April 15, 2004
  
 










     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01146-CR




JAMIE LOU TYLER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 02CR0503




O P I N I O N

          After a bench trial, the trial court convicted appellant Jamie Lou Tyler of felony
misapplication of fiduciary property and assessed punishment at confinement for one
year, probated for three years. The trial court further ordered that Tyler pay
restitution in the amount of $16,177. Tyler contends on appeal that the trial court
erred in (1) denying her motion for instructed verdict; (2) violating the ex-post-facto
provisions of the United States and Texas constitutions; and (3) ordering restitution
to be paid to persons other than the victim alleged in the indictment. We reform the
judgment and affirm.
Facts
          Howard and Grace Rogers had five children and many grandchildren. Howard
died in February 1995, leaving his estate to Grace. Their son, Michael, helped
organize Howard’s estate and at that time, Grace held about $48,000 in cash assets. 
Appellant Tyler married one of the Rogers’ grandchildren, Stephen Kadlecek. Grace
developed a close relationship with Tyler after the birth of Tyler’s daughter, Grace’s
great-granddaughter. In 1995, Tyler volunteered to assist Grace with her financial
affairs.
          Grace added Tyler as a signatory on her bank accounts, and executed a durable
power of attorney naming Tyler as her “agent (attorney-in-fact).” The power of
attorney gave Tyler power over all of Grace’s assets. Between February 1995 and
June 1997, Tyler withdrew approximately $48,000 from Grace’s bank account. Tyler
spent some of Grace’s money on improvements to Tyler’s home, and on loan
payments for Tyler’s automobiles and mortgage. In August 1997, Grace revoked the
power of attorney, and Michael began again to manage her financial affairs. At that
point, Grace’s bank account contained less than $150. Grace died before the
inception of these criminal proceedings.
Legal Sufficiency
          Tyler contends that the trial court erred in denying her motion for directed
verdict. A challenge on appeal to the denial of a motion for directed verdict is a
challenge to the legal sufficiency of the evidence. Williams v. State, 937 S.W.2d 479,
482 (Tex. Crim. App. 1996). When evaluating the legal sufficiency of the evidence,
we should view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Swearingen v. State, 101 S.W.3d 89, 95 (Tex.
Crim. App. 2003).
          Section 32.45 of the Texas Penal Code defines the offense of misapplication
of fiduciary property, providing in pertinent part:
A person commits an offense if he intentionally, knowingly, or
recklessly misapplies property he holds as a fiduciary or property of a
financial institution in a manner that involves substantial risk of loss to
the owner of the property or to a person for whose benefit the property
is held.

Tex. Pen. Code Ann. § 32.45 (Vernon Supp. 2004). Tyler contends the evidence is
legally insufficient because the trial court remarked during a hearing on Tyler’s
motion for directed verdict that Tyler had no formal trustee relationship with Grace,
and therefore a fiduciary relationship “may not have” existed. As the law requires the
trial court to find that a fiduciary relationship exists in order to find guilt, Tyler
contends that the trial court’s observation negates any criminal liability on her part.
          Tyler’s contention ignores the fact that after closing argument, the trial court
found beyond a reasonable doubt that Tyler misappropriated funds belonging to
Grace Rogers and that she committed a criminal offense by “knowingly or recklessly
misapplying property she held in a fiduciary capacity.” The trial court further
clarified its finding when it explained that “. . . those funds were given to her by
virtue of that power of attorney, [and] when she deposited them into the Amoco
Credit Union and then withdrew them into her own account . . . she was acting in a
fiduciary capacity and misapplied funds.”
          The record contains legally sufficient evidence to support the trial court’s
findings that Tyler acted as a fiduciary and misapplied funds. The power of attorney
that Grace executed in April 1995, admitted into evidence, named Tyler as her “agent
(attorney-in-fact).” While Tyler served in that capacity, in April 1995, she transferred
$4,123.46 from Grace’s account to her own personal bank account, and kept $1,000
in cash. In January 1996, she withdrew another $2,663.65 from the bank account, and
used the funds to install cabinets in her home on Tiki Island. In February 1996, Tyler
transferred $5,400 from Grace’s bank account to her own personal bank account. In
June and July 1996, Tyler drew checks on Grace’s bank account, each in the amount
of $942.30, to make monthly payments on auto loans. In July and August 1996, Tyler
drew checks on the account, each in the amount of $1,091.10, payable to
“Countrywide” for mortgage payments on Tyler’s home.
          Michael Rogers testified at trial that after Grace revoked Tyler’s power of
attorney, he assumed responsibility for managing her financial affairs. He testified
that during the time period between February 1995 and June 1997, $48,000 had been
removed from Grace’s bank account, and that Grace did not have any financial
obligations or needs that necessitated $48,000 in withdrawals. While Michael Rogers
managed her financial affairs, Grace’s living expenses rarely exceeded her monthly
income of approximately $1,500. Michael testified that after Grace revoked Tyler’s
power of attorney, the relationship between Tyler and Grace drastically changed, and
that Tyler may have visited Grace once before she died. 
          Tyler further contends that the evidence is legally insufficient because Grace
died before trial, and thus could not testify as to her relationship with Tyler and as to
whether some of the funds Tyler withdrew were gifts. The trial court noted that based
on the evidence of Mrs. Rogers’ income and standard of living, no evidence in the
record supported an inference that the transfers from Grace’s bank account were gifts. 
The trial court thus considered this point together with all of the evidence presented
at trial and rejected this contention. We hold that there was more than a scintilla of
evidence from which a rational trier of fact could infer that Tyler misapplied Mrs.
Rogers’ property that she held as a fiduciary pursuant to the power of attorney. 
Swearingen, 101 S.W.3d at 95.
Ex-Post-Facto Application
          Tyler contends that the trial court violated the ex-post-facto provision of the
United States and Texas Constitutions, because she “was prosecuted under a theory
that when it occurred was not a criminal act.”
          The Texas Legislature amended Section 32.45(a)(1)(B) of the Texas Penal
Code in 2001 to clarify its definition of fiduciary, enumerating “an attorney-in-fact
or agent appointed under a durable power of attorney as provided by Chapter XII,
Texas Probate Code” as one type of fiduciary prosecutable under the statute. See
Tex. Pen. Code Ann. § 32.45 (Vernon Supp. 2004). Tyler contends that in amending
Section 32.45 of the Texas Penal Code, the Legislature criminalized an act that was
formerly innocent to perform. See Collins v. Youngblood, 497 U.S. 37, 42, 110 S. Ct.
2715, 2719 (1990) (describing ex-post-facto law as “every law that makes an action
done before the passing of the law, and which was innocent when done, criminal; and
punishes such action”). See also Barnes v. State, 70 S.W.3d 294, 302 (Tex.
App.—Fort Worth 2002, pet. ref’d). Tyler contends that because the earlier version
of Section 32.45(a) did not specifically enumerate an “attorney-in-fact” or an “agent
appointed under a durable power of attorney” within its definition of the term
“Fiduciary,” her power of attorney for Grace did not establish a fiduciary relationship.
          Before the 2001 amendments, Section 32.45(a) provided in pertinent part:
(a) For purposes of this section:
 (1) “Fiduciary” includes:
 (A) trustee, guardian, administrator, executor, conservator, and
receiver;
 (B) any other person acting in a fiduciary capacity, but not a
commercial bailee unless the commercial bailee is a party in a
motor fuel sales agreement with a distributor or supplier, as those
terms are defined by Section 153.001, Tax Code.

Tex. Pen. Code Ann. § 32.45 (Vernon Supp. 2000) (emphasis added).
          In Coplin v. State, 585 S.W.2d 734, 735 (Tex. Crim. App. 1979), the Court of
Criminal Appeals held that the phrase “any other person acting in a fiduciary
capacity” embraces fiduciary relationships not specifically enumerated in Section
32.45(a)(1)(A).



          Here, Tyler’s status as Grace’s agent created a fiduciary relationship. Agency
is a consensual relationship between two parties where one, the agent, acts on behalf
of the other, the principal. Bhalli v. Methodist Hosp., 896 S.W.2d 207, 210 (Tex.
App.—Houston [1st Dist.] 1995, writ denied). A fiduciary relationship exists
between an agent and a principal. Mathews v. Sun Oil Co., 425 S.W.2d 330, 337
(Tex. 1968). An appointment of an attorney-in-fact creates an agency relationship. 
Smith v. Lanier, 998 S.W.2d 324, 334 (Tex. App.—Austin 1999, pet. denied). It is
undisputed that Tyler served as Grace’s attorney-in-fact, and therefore a fiduciary
relationship existed between Tyler and Grace. See id. See also Mathews, 425 S.W.2d
at 337. 
          Because the appointment of an attorney-in-fact creates a fiduciary relationship,
we hold that section 32.45(a)(1)(B) of the Texas Penal Code applied to Tyler before
the amendments. Tyler’s conduct as Grace’s attorney-in-fact was therefore subject
to prosecution at the time these events arose. We therefore conclude that Tyler’s
conviction does not violate the ex-post-facto provisions of the United States
Constitution or the Texas Constitution.
Restitution
          Tyler contends that the trial court abused its discretion when it ordered that
Tyler pay restitution to Grace’s heirs. She contends that the heirs named in the trial
court’s restitution order were not “direct victims” of the offense, and that the record
contains no factual basis supporting the restitution award. Restitution prevents
unconscionable loss to the party wrongfully deprived of funds, and unjust enrichment
to the party wrongfully in receipt of those funds. See Bailey v. State, No. 2189-01,
2004 WL 574639 (Tex. Crim. App. March 24, 2004) (Cochran, J., concurring)
(discussing principle of restitution). Challenges to restitution orders are reviewed
under an abuse of discretion standard. Cartwright v. State, 605 S.W.2d 287, 288-89
(Tex. Crim. App. 1980). An abuse of discretion occurs if the trial court acts without
reference to any guiding rules and principles or acts arbitrarily or unreasonably. 
Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).
          There are three limits on the amount of restitution that a trial court can order. 
See Campbell v. State, 5 S.W.3d 693, 696-97 (Tex. Crim. App. 1999). The amount
must be just and supported by a factual basis within the loss of the victim. Id. The
restitution ordered must also be for the offense for which the convicted person is
criminally responsible. Id. Finally, restitution is proper only for the victim or victims
of the offense for which the offender is charged. Id. 
          If, as in this case, the victim is deceased, our Code of Criminal Procedure
provides that the trial court shall order the defendant to make restitution to the
victim’s estate. Tex. Code Crim. Proc. Ann. art. 42.037(d) (Vernon Supp. 2004).
          At trial, Tyler contended that she should not be ordered to make restitution to
Grace’s heirs, because the beneficiaries of her estate are not victims of Tyler’s
criminal conduct. See Gonzalez v. State, 954 S.W.2d 98, 106 (Tex. App.—San
Antonio 1997, no pet.) (restitution may be paid only to the victim of the offense). 
The State contends that Article 42.037(d) authorized the trial court to order Tyler to
pay restitution to Grace’s estate, and that the trial court’s order complied with Article
42.037 because it ordered Tyler to make restitution to the purported heirs of the
estate.


 The trial court acknowledged that its restitution order “does sort of go back
to heirship which I don’t have any right to determine.”
          We hold that the restitution order in the trial court’s judgment is not in accord
with article 42.037(d), which requires that restitution be directed to the victim’s
estate. Tex. Code Crim. Proc. Ann. art. 42.037 (Vernon Supp. 2004). Although
Article 42.037 serves as a vehicle by which the victim’s heirs may ultimately receive
funds paid as restitution, the trial court had no authority to determine the beneficiaries
of the estate on the record before it. Article 42.037 mandates that restitution be
directed to the victim’s estate, but does not empower the trial court to administer the
estate in the context of the criminal proceedings.
            This is not a case in which the restitution amount is unsupported by the
record. See Barton v. State, 21 S.W.3d 287, 290 (Tex. Crim. App. 2000) (if amount
of restitution unsupported by record, proper procedure is to abate appeal, set aside
amount of restitution, and remand case for hearing to determine just amount of
restitution). Indeed, the trial court traced the misappropriated funds, and the amount
of restitution that the trial court ordered was within the range of evidence offered at
trial. See Swope v. State, 723 S.W.2d 216, 229 (Tex. App.—Austin 1986), aff’d, 805
S.W.2d 442 (Tex. Crim. App. 1991) (because amount of restitution ordered equaled
sum of money wrongfully transferred, due process requirement that factual basis of
restitution award was within record). Nor is this a case in which the trial court
intended to award restitution to one not the victim of the offense. See Lemos v. State,
27 S.W.3d 42, 49 (Tex. App.—San Antonio 2000, pet. ref’d) (therapeutic service
expenses incurred by victim’s wife and daughter stricken from restitution order
because wife and daughter not victims of offense). Here, Grace had five children and
many grandchildren, and the State offered no evidence of probate proceedings, if any,
and no evidence as to who could act on behalf of the estate as administrator. Thus,
the trial court should have awarded restitution to the estate, as required by the statute,
and left any determination of heirship to an appropriate proceeding.



          “An appellate court has the power to correct and reform a trial court judgment
‘to make the record speak the truth when it has the necessary data and information to
do so. . . .’ ” Nolan v. State, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.]
2001, no pet.) (citing Asberry v. State, 813 S.W.2d 526, 529 (Tex. App.—Dallas
1991, pet. ref’d)); see also Tex. R.App. P. 43.2(b). This power is not dependent upon
the request of a party. Asberry, 813 S.W.2d at 529-30. Considering the purpose of
restitution, we modify the trial court’s judgment to reflect that the restitution ordered
be paid directly to Grace’s estate. See Tex. R.App. P. 43.2(b) (court of appeals may
modify the trial court’s judgment and affirm it as modified).Conclusion
          We conclude that the evidence is legally sufficient to support Tyler’s
conviction under the then-existing elements of the offense. The trial court therefore
did not err in denying Tyler’s motion for directed verdict or violate the constitutional
prohibition of ex-post-facto laws. We conclude, however, that the restitution should
have been awarded to the victim’s estate, rather than individual putative heirs. We
therefore modify the judgment of the trial court to reflect that restitution be paid to
Grace Rogers’ estate in accordance with Article 42.037 of the Texas Code of
Criminal Procedure, and affirm the judgment as modified.
 
 
                                                             Jane Bland
                                                             Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.
Publish. Tex. R. App. P. 47.2 (b).