**SMK ENERGY CORPORATION and SMK Exploration Company, Appellants,**

v.

**WESTCHESTER GAS COMPANY, Appellee.**

**No. 9403.**

Court of Appeals of Texas, Texarkana.

Nov. 19, 1985.

Rehearing Denied Dec. 17, 1985.

LeRoy LaSalle, LaSalle, Underwood & Moers, Carthage, for appellants.

Carl Roth, Jones, Jones, Baldwin, Curry & Roth, Marshall, Howard Coghlan, Kenley, Boyland & Coghlan, Longview, for appellee.

CORNELIUS, Chief Justice.

This is an appeal from a summary judgment which held that certain oil and gas leases had expired except for 40 acres around a producing well which had been drilled on the 203 acre tract covered by the leases.

SMK acquired by assignment two oil and gas leases covering 203 acres in Harrison County. Each of the leases covered an undivided interest in the minerals in the 203 acre tract and together they vested in SMK the full leasehold interest. Just before the primary terms of the leases expired, SMK began the drilling of a well on a designated 40 acre drilling unit wholly within the 203 acre tract. Thereafter Westchester acquired from the mineral owners top leases covering all of the 203 acre tract except the 40 acres in the designated unit around the well which had been completed as a producer. SMK subsequently brought suit to cancel Westchester's leases and to enjoin any drilling operations under them. Both parties filed motions for summary judgment, contending that SMK's leases were unambiguous and they should be interpreted as a matter of law. The trial judge held that SMK's leases had expired as to the 163 acres not included in the 40 acres around its producing well, and granted Westchester's motion for judgment.

The leases in question are on printed forms designated as "Pound Printing Company Producers 88." Attached to the printed forms are typewritten "riders" containing Paragraphs 12 through 17. Paragraph 17 states:

It is hereby expressly agreed that the provisions of this rider shall supercede (sic) any portion of the printed form of this lease which is incosistent (sic) herewith, and the other printed provisions of the lease, to which this is attached, are in all things subrogated to the expressed (sic) and implies (sic) terms and conditions of this rider.

Paragraph 13 of the rider stated:

Notwithstanding any provisions in this lease to the contrary, it is understood and agreed that this lease shall not (repeat not) extend beyond the primary term as to any part of the acreage described therein, excepting that part of the acreage which is then (at the end of the primary term) pooled or unitized for drilling, reworking operations, or production of oil and/or gas from such a unit or units then (at the end of the primary term) formed by LESSEE; and, as to that part of the acreage included within the boundaries of a unit or units so formed, such lease shall be perpetuated and continued only so long after the expiration of the primary term as production, drilling or reworking operation are continuously conducted thereon without interruption or cessation of more than ninety (90) days.

SMK contends that Paragraph 13 is an inartfully drawn Pugh clause, or Freestone rider, which was not to become effective unless and until pooling of a portion of the lease was accomplished, and since no pooled unit with other land was formed, the provisions of Paragraph 13 never came into effect and the leases were held in force as to the entire 203 acre tract by the producing well. Westchester contends that Paragraph 13 is not a Pugh clause or Freestone rider, but is a provision specifically designed to prevent the lessee from perpetuating the entire 203 acre leased premises by only one producing well.

Ordinarily, production from any part of the land included in an oil and gas lease will perpetuate the lease beyond the primary term as to all of the land covered thereby, and the printed portions of the

leases in question here so provide. Those provisions, however, were expressly superseded by the provisions of Paragraph 13 which restrict the acreage perpetuated by production to that which is pooled or unitized for drilling, reworking, or production. Since the 163 acres outside SMK's 40 acre drilling unit clearly have not been pooled or unitized, the leases as to those acres expired at the end of the primary term according to the express provisions of Paragraph 13.

We cannot agree with SMK's argument that Paragraph 13 did not become effective unless pooling was accomplished. That would have been the case if Paragraph 13 were a Pugh clause or a Freestone rider, for such clauses or riders provide generally that if a portion of the leased premises is pooled with other land, production from that pooled unit will perpetuate the lease beyond the primary term only as to the acreage which is actually included in the pooled unit. Paragraph 13 is not a Pugh clause or Freestone rider. It is not a part of the pooling provisions of the printed lease, does not refer to those provisions, and is in no way conditioned upon the exercise of the pooling rights granted by Paragraph 4 of the printed lease. From its clear and express language it provides that in no event will the lease be perpetuated beyond the primary term except as to the leased acreage which is "pooled or unitized."

SMK argues that the 40 acre drilling unit designated by it around its producing well is not a pool or unit as contemplated by Paragraph 13. It is not necessary for us to decide that question. Westchester makes no claim to the 40 acres around the well, and clearly the remaining 163 acres of the 203 acre tract were not "pooled or unitized" as provided by Paragraph 13 at the end of the primary term.

In interpreting an oil and gas lease the court must ascertain the intention of the parties as that intention has been expressed throughout the lease as a whole. *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341 (1957). The court cannot

make a new contract for the parties or base its decision on what it perceives to be the wisdom of the agreement. Neither can the court put into effect an intention which it believes the parties meant to express but which they failed to express. The contract must be enforced as written. *Hastings v. Pichinson,* 370 S.W.2d 1 (Tex.Civ.App.—San Antonio 1963, no writ); *Texas Co. v. Parks,* 247 S.W.2d 179 (Tex.Civ.App.—Fort Worth 1952, writ ref'd n.r.e.); *Shell Oil Co. v. Goodroe,* 197 S.W.2d 395 (Tex.Civ.App. —Texarkana 1946, writ ref'd n.r.e.). While the four corners of the instrument must be looked to, Paragraphs 13 and 17 do just that as they specifically provide that Paragraph 13's provisions shall supersede and control over all other inconsistent provisions of the lease.

For the reasons stated, the judgment of the trial court is affirmed.

GRANT, J., not participating.