11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Sabre Oil & Gas Corporation

Appellant

Vs.                   No.  11-00-00078-CV C
Appeal from Erath County

Hershel Gibson and wife, Mary Margaret Gibson

Appellees

 

Hershel and Mary Margaret Gibson brought suit
against Sabre Oil & Gas Corporation seeking a determination that an oil and
gas lease claimed by Sabre had terminated and that a gas unit formed by Sabre
was void.  The trial court found that
the gas unit was formed in violation of the provisions of the oil and gas lease
and void ab initio.  Sabre appeals.  We reverse and remand.

In 1957, the Gibsons=
predecessors in interest, together with others as lessors, executed an oil,
gas, and mineral lease to Sabre=s
predecessor as lessee.  The lease
covered 38 separate tracts of land.  The
Gibsons own all of the minerals in three tracts under the lease, and Sabre
acquired rights to those tracts subject to a depth limitation.  Sabre drilled and completed a gas well on one
of the three tracts of land in April 1997. 
On July 29, 1997, Sabre filed a Designation of Unit, known as the Gibson
#1 Gas Unit.  This unit pooled the
Gibson=s three tracts
of land, containing 155.33 acres, with other land, containing  239.12 acres which were not a part of the
1957 lease.  








The Gibsons filed suit against Sabre, Tandem
Energy Corporation, and Rainbow Energy Corporation seeking a declaration that
the 1957 lease had terminated as to the Gibsons=
lands and that the Gibson #1 Unit was void because it was formed in violation
of the 1957 lease.  On October 28, 1999,
the trial court granted the motion for partial summary judgment of Sabre,
Tandem Energy, and Rainbow Energy, denying the Gibson=s claim that the 1957 lease had terminated.[1]  On January 6, 2000, the trial court entered
another order granting the Gibsons=
motion for partial summary judgment and found that the Gibson #1 Unit was
formed in Aviolation
of the provisions of the oil and gas lease and void ab initio.@  The trial court entered a final judgment on March 3, 2000,
awarding the Gibsons damages, attorney=s
fees, and prejudgment and post-judgment interest.  

We will first address Sabre=s issues on appeal addressing the trial court=s jurisdiction to enter the
judgments of January 6, 2000, and March 3, 2000, and addressing the trial court=s denial of Sabre=s plea in abatement.  

In its second issue on appeal, Sabre contends that
the trial court was without jurisdiction to enter its order on the Gibsons= motion for partial summary
judgment on January 6, 2000, and that the trial court was without jurisdiction
to enter the final judgment on March 3, 2000. 
Sabre urges that the trial court=s
previous order granting summary judgment issued on October 28, 1999,  was 
a final, appealable order that disposed of all parties and issues.    

The October 28 order states that the Gibsons= second motion for partial
summary judgment is denied, that the second motion for partial summary judgment
of Tandem Energy and Rainbow Energy is granted, and that the third motion for
partial summary judgment of Sabre is granted. 
The order also states that the Gibsons Atake
nothing by their suit against SABRE OIL & GAS CORPORATION for oil and gas
lease termination.@  The order contains a AMother Hubbard@
clause providing that AALL
RELIEF NOT EXPRESSLY GRANTED HEREIN IS EXPRESSLY DENIED.@ 

Sabre argues that, because this order contained a
Mother Hubbard clause, it disposed of all parties and issues and became final
30 days after October 28, 1999. 
Consequently, Sabre urges that the trial court was without jurisdiction
to enter the summary judgment of January 6, 2000, in which the court held that
Sabre=s lease was void
ab initio.  We disagree.








The inclusion of a Mother Hubbard clause does not
indicate that a judgment rendered without a conventional trial is final for
purposes of appeal.  Lehmann v. Har‑Con
Corporation, 39 S.W.3d 191 (Tex.2001). 
When there has not been a conventional trial on the merits, an order or
judgment is not final for purposes of appeal unless it actually disposes of
every pending claim and party or unless it clearly and unequivocally states
that it finally disposes of all claims and all parties.  Lehmann v. Har‑Con Corporation,
supra.  The trial court stated in its
October 28 order that it was addressing the parties= motions for partial summary judgment.  The order states that the Gibsons take
nothing on their claim against Sabre for oil and gas lease termination;
however, the order does not reference the Gibsons=
other claims against Sabre.  We find
that the October 28 order does not clearly and unequivocally state that it
disposes of all claims and parties. 
Sabre=s second
issue on appeal is overruled. 

In its third issue, Sabre complains that the trial
court erred in denying its plea in abatement. 
Sabre included in its second amended original answer a plea in abatement
which requested the trial court to join the 60 other royalty owners of the  239.12 acres pooled with the Gibsons= land to form the Gibson #1
Unit.  Appellant cites  Veal v. Thompson,  159 S.W.2d 472 (Tex.1942), as authority for its argument that all
royalty owners are necessary parties pursuant to TEX.R.CIV.P. 39.  However, Veal was decided prior to
the 1971 amendment to Rule 39.   

The current Rule 39(a) provides that:

A person...shall be joined as a party in the
action if (1) in his absence complete relief cannot be accorded among those
already parties, or (2) he claims an interest relating to the subject of the
action and is so situated that the disposition of the action in his absence may
(i) as a practical matter impair or impede his ability to protect that interest
or (ii) leave any of the persons already parties subject to a substantial risk
of incurring double, multiple, or otherwise inconsistent obligations by reason
of his claimed interest.

 

Rule 39(a) no longer speaks of "necessary" and
"indispensable" parties, and Texas courts have begun to discard these
terms.   Texas Oil & Gas Corporation
v. Ostrom, 638 S.W.2d 231(Tex.App. ‑ Tyler 1982, writ ref=d n.r.e.); Carper v.
Halamicek, 610 S.W.2d 556, 557 (Tex.Civ.App. ‑ Tyler 1980, writ ref'd
n.r.e.).  Moreover, Rule 39 focuses not
so much upon whether the court has jurisdiction, but upon whether the court
ought to proceed with the parties before it. 
Cooper v. Texas Gulf Industries, Inc., 513 S.W.2d 200, 204
(Tex.1974).  Under Rule 39, any change
should be to lessen the number of "indispensable" parties.   1 McDONALD, TEXAS CIVIL PRACTICE ' 5.37 (1992).  The question of joinder is within the
discretion of the trial court.  Pampell
Interests, Inc. v. Wolle, 797 S.W.2d 392 (Tex.App. ‑ Austin 1990, no
writ).








The Gibsons brought suit against Sabre seeking a
determination that the oil and gas lease claimed by Sabre had terminated and
that the Gibson #1 Unit  was void.  The trial court was able to provide the
requested relief without joining the other royalty owners.  Although they had an interest in that their
share of the production from the pooled unit would be affected, presence of the
other royalty owners was not necessary to determine whether Sabre pooled in bad
faith and breached the terms of the lease. 


We find that the trial court did not err in
denying Sabre=s plea
in abatement.  Sabre=s third issue on appeal is
overruled.

Having addressed its challenge to jurisdiction and
to denial of its plea in abatement, we now address Sabre=s first issue on appeal.  In its first issue, Sabre argues that the
trial court erred in narrowly construing the pooling provision of the 1957
lease.  Paragraph No. 4 of the 1957
lease provides:

Lessee, at his option, is hereby given the right
and power to pool or combine the acreage covered by this lease or any portion
thereof, with other land, lease or leases in the immediate vicinity thereof, to
comprise what is hereinafter called a Aunit@, when in Lessee=s judgment it is necessary
or advisable to do so in order properly to develop and operate said premises
for the production of oil, gas or gaseous substances, including condensate.

 

The 1957 lease also contains Paragraph No. 4a which states:

Notwithstanding any language in Paragraph A4@ above, to the contrary, it is expressly
agreed and understood by and between the parties hereto that before Lessee
hereunder shall be allowed to pool or unitize any of the lands embraced by this
lease with other lands not owned by the Lessor herein Lessee shall designate
full units from the lands embraced by this lease first and in the event there
is land in excess of a full unit remaining then same may be done in accordance
with Paragraph A4@ above. 

 

The Gibsons contend that, under Paragraph No. 4a,
Sabre could not pool other lands not owned by the lessor until all of the lands
embraced by the 1957 lease had been included in full units.  Hershel Gibson stated in his affidavit that
not all lands in the 1957 lease were included in units at the time Sabre
designated the Gibson #1 Unit.  








In the absence of clear language to the contrary,
pooling clauses should not be construed in a narrow or limited sense.   Elliott v. Davis, 553 S.W.2d 223
(Tex.Civ.App. ‑ Amarillo 1977, writ ref=d
n.r.e.); Texaco, Inc. v. Lettermann, 343 S.W.2d 726, 732 (Tex.Civ.App. -
Amarillo 1961, writ ref'd n. r. e.).   
An oil and gas lease is a contract and must be interpreted as one.  Browning Oil Company, Inc. v. Luecke, 38
S.W.3d 625 (Tex.App. ‑ Austin 2000, pet=n
den=d); Hitzelberger
v. Samedan Oil Corporation, 948 S.W.2d 497, 503 (Tex.App. - Waco 1997, pet=n den=d).  In construing an unambiguous oil and gas
lease, our task is to ascertain the parties' intentions as expressed in the
lease.   Heritage Resources, Inc. v.
NationsBank, 939 S.W.2d 118, 121 (Tex.1996); Sun Oil Company (Delaware) v.
Madeley, 626 S.W.2d 726, 727‑28 (Tex.1981);  Browning Oil Company, Inc. v. Luecke, supra. We must examine the
entire document and consider each part with every other part so that the effect
and meaning of one part on any other part may be determined.  Heritage Resources, Inc. v. NationsBank,
supra;  Steeger v. Beard Drilling, Inc.,
371 S.W.2d 684, 688 (Tex.1963).  We
presume that the parties to a contract intend every clause to have some effect.
Heritage Resources, Inc. v. NationsBank, supra; Ogden v. Dickinson State Bank,
662 S.W.2d 330, 331 (Tex.1983).  We give
terms their plain, ordinary, and generally accepted meaning unless the
instrument shows that the parties used them in a technical or different
sense.  Heritage Resources, Inc. v.
NationsBank, supra.

 After
examining the entire 1957 lease, an unambiguous instrument, and after
harmonizing all provisions, we find that the Gibson #1 Unit was not formed in
violation of the provisions of the lease.[2]  Paragraph No. 8 of the lease provides:

The rights of either party hereunder may be
assigned in whole or in part and the provisions hereof shall extend to the
heirs, successors and assigns.

 

In order to give effect to Paragraph No. 8, a lessee who acquired
only a portion of the lands covered by the 1957 lease would satisfy the
requirements of Paragraph No. 4a if the lessee included all of the tracts under
the lease to which he has been assigned. 

It is insightful to substitute the names of the
successors in interest and insert the language of Paragraph No. 8 in place of
the original parties to the lease and the lands covered by the lease.  Such a reading would provide in Paragraph
No. 4a that:








[B]efore
[Sabre] hereunder shall be allowed to pool or unitize any of the lands embraced
by [the assignment of] this lease with other lands not owned by the [Gibsons]
herein [Sabre] shall designate full units from the lands embraced by [the
assignment of]  this lease first and in
the event there is land in excess of a full unit remaining then same may be
done in accordance with Paragraph A4@ above. 

 

The record shows that Sabre included all of
the tracts owned by the Gibsons as part of the 1957 lease in its Gibson #1 Unit
and that these three tracts were the only land under the 1957 lease to which
Sabre had acquired rights.  The 1957
lease indicates an intent to authorize pooling under Paragraph No. 4.  The only limitation is that the lessee first
attempt to include all land under the 1957 lease.  

If it could not acquire the
consent or interest from the leasehold owners under other lands covered by the
1957 lease, Sabre could not pool at all. 
The pooling provision under Paragraph No. 4 would have no effect.   We must presume the parties intended for
every clause to have some effect.  The
1957 lease gives the lessee the right to pool if he first uses every effort not
to diminish the lessor=s
interest.  The Gibsons= interest was not
diminished by routine pooling in that all of the land they own was included in
the unit.  Examining the entire document
and harmonizing all parts of the lease, we find that the trial court erred in
construing the pooling clause.  Sabre=s first issue on
appeal  is sustained.

Because of our disposition
of Sabre=s first three
issues on appeal, we need not address Sabre=s
remaining issues.  TEX.R.APP.P. 47.1.

The Gibson=s bring two cross-points in
which they argue that the trial court erred in denying their claim that the
1957 lease had terminated.  On October
28, 1999, the trial court entered an order denying the Gibson=s motion for partial
summary judgment and granting the motions for partial summary judgment of
Tandem Energy, Rainbow Energy, and Sabre. 
Tandem and Rainbow were then severed from the cause and a final judgment
was entered that the Gibsons take nothing by their suit against Tandem and
Rainbow.  








Sabre contends that the Gibsons= cross-points on the issue
of lease termination are barred by res judicata and/or want of
jurisdiction.  Sabre argues that,
because the trial court entered a final judgment against the Gibsons on the
issue of lease termination and because the Gibsons did not perfect an appeal
from that judgment, they are barred from now challenging the trial court=s ruling on the issue of
lease termination.  However, the res
judicata effects of an action cannot preclude litigation of claims that a trial
court explicitly separates or severs from that action.  Van Dyke v. Boswell, O=Toole, Davis &
Pickering, 697 S.W.2d 381 (Tex.1985). 
We will address both of the Gibsons=
cross-points.

The Gibsons first contend that the trial court
erred in ruling that the 1957 lease did not terminate under the habendum
clause.[3]  The habendum clause of the 1957 lease states
in Paragraph No. 2 that:

Subject to the other provisions herein contained,
this lease shall be for a term of 5 years from this date (called Aprimary term@), and as long thereafter
as oil, gas or other mineral is produced from said land or unitized area
hereunder, and as long as operations are prosecuted under the terms
hereof.  

 

The Gibsons argue that the 1957 lease is divisible as to each of
the separate tracts and that production was required on the three tracts of
land they own in order to hold the lease. 
The general rule is that production on one tract will operate to
perpetuate the lease as to all tracts described therein and covered
thereby.  Mathews v. Sun Oil Company,
425 S.W.2d 330 (Tex.1968); Sun Operating Limited Partnership v. Holt, 984
S.W.2d 277 (Tex.App. ‑ Amarillo 1998, pet=n
den=d).  The Gibsons contend that other provisions of
the 1957 lease, specifically Paragraph No. 3, a typical royalty clause; No. 4A,
the atypical pooling clause addendum; and No. 5A, the atypical minimum royalty
provision, when read together with the habendum clause indicate that the 1957
lease is not to be read as a single lease but, rather, as separate leases for
each tract of land.








The Gibsons bring a litany of cases for the
proposition that, while the habendum clause is usually treated as indivisible,
it is recognized that the lease may contain clauses for divisibility in which
production will extend the life of the lease only as to that portion of the
subdivided leasehold on which production is obtained.  As examples, the Gibsons cite Riley v. Meriwether, 780 S.W.2d 919
(Tex.App. ‑ El Paso 1989, writ den=d);  SMK Energy Corporation v. Westchester Gas
Company, 705 S.W.2d 174 (Tex.App. ‑ Texarkana 1985, writ ref=d n.r.e.); Gibson Drilling
Co. v. B & N Petroleum Inc., 703 S.W.2d 822 (Tex.App. ‑ Tyler 1986,
writ ref=d n.r.e.);
and Fisher v. Walker, 683 S.W.2d 885 (Tex.App. ‑ El Paso 1985, writ ref=d n.r.e. ).  Each of these cases is distinguishable.  In each case, the lease examined by the
court contained additional language modifying the habendum clause and providing
for termination as to lands not in a producing unit.

We find, in reading the entire 1957 lease, that
production was not required on each tract of land in order to extend the
lease.  The summary judgment evidence
shows that there was production on the land included in the 1957 lease.  The Gibsons=
first cross-point is overruled.

In their second cross-point, the Gibsons complain
that the trial court erred in ruling that the 1957 lease did not terminate
under the rental clause.  Paragraph No.
5 of the 1957 lease provides that, if operations for drilling are not commenced
on or before a year from the date of the lease, the lease shall terminate:

[U]nless...Lessee
shall pay or tender to Lessor...the sum of One Dollar per acre for all mineral
acres owned by Lessors...which shall cover the privilege of deferring
commencement of drilling operations for a period of twelve (12) months. 

 

Paragraph No. 5a of the 1957 lease provides:

 

Lessee guarantees that the royalties and/or
rentals payable under this lease shall equal or exceed a sum of money equal to
One Dollar ($1.00) per acre for each acre of land covered by this lease for
each twelve month period during which this lease remains in force and,
notwithstanding any other  provision
contained in this lease, the Lessee binds himself, his heirs,
successors and assigns, to pay a minimum rental each year while this
lease remains in force equal to One Dollar ($1.00) per acre for each acre of
land covered by this lease, and in the event the royalties payable by
Lessee, his heirs, successors and assigns, shall amount to less than One Dollar
($1.00) per acre for each acre of land covered by this lease during each twelve
month period while this lease is in force, then and in such event, the
difference between the amount paid and One Dollar ($1.00) per acre for each
acre of land covered by this lease for said period of time shall be paid by the
Lessee, his heirs, successors and assigns, to Lessor, and in the event of
failure to make any such payment (which payment shall be due not later than
thirty (30) days after the expiration of any twelve month period during which this
lease is in force) when such payment is due shall terminate this lease as to
both parties.  (Emphasis added)

 








The Gibsons urge two theories under this
cross-point.  First, the Gibsons urge
that the emphasized language in Paragraph No. 5a obligates Sabre to pay one
dollar per acre in rental payments on all tracts where there is no production.
Second, the Gibsons urge that the wording AOne
Dollar ($1.00) per acre for each acre@
should be understood to mean that each mineral owner under the 1957 lease
should receive a minimum of one dollar for each acre they own whether the
production is from their lands or not. 
We disagree.

Paragraph No. 5a is atypical.  However, we must read the entire lease and
harmonize Paragraph No. 2, the habendum clause; Paragraph No. 3, the royalties
clause; Paragraphs Nos.  4 and 4A, the
pooling provisions, with Paragraph No. 5, the delay rental provisions, and
Paragraph No. 5A, the atypical minimum royalty clause.  After the expiration of the primary term,
the payment of rentals will not keep a lease in effect.  Tennant v. Matthews, 19 S.W.2d 1115
(Tex.Civ.App. - Eastland 1929, writ ref=d).  We find that, under the terms of the 1957
lease, the lessee was obligated to make a minimum royalty payment of one dollar
per acre.  Paragraph No. 5a does not
require a rental payment in addition to the royalty payment.

On September 2, 1960, all of the lessors under the
1957 lease executed a stipulation providing that: 

[R]oyalties
on any oil, gas and minerals produced from any of the tracts of land covered by
said lease shall be paid to the record owner of such tract, that is, the tract
from which the production is taken, unless such tract has been pooled with any
other tract in forming a unit, in which event the royalties shall be paid to
the owners of land within the unit in proportion to their interests.

 








The Gibsons offer this stipulation as evidence that the lease
should be treated as separate leases. 
This argument fails for several reasons.  First, we are interpreting the 1957 lease and should not consider
extraneous evidence.  The courts will
enforce an unambiguous instrument as written; and, in the ordinary case, the
writing alone will be deemed to express the intention of the parties.   Sun Oil Company  (Delaware) v. Madeley, supra.  
Next, the stipulation is binding on the lessors and their successors in
interest but is not binding on the lessees and their successors in interest who
did not execute the agreement.  Finally,
the 1957 lease is what is defined as a community lease by the fact that 38
tracts of land under different ownership were included in the same lease.  Parker v. Parker, 144 S.W.2d 303
(Tex.Civ.App. - Galveston 1940, writ ref=d);
French v. George, 159 S.W.2d 566 (Tex.Civ.App. - Amarillo 1942, writ ref=d).  The stipulation is merely an agreement among
the lessors to counteract the effects of a community lease and to provide for
the division of proceeds.  It does not
make the 1957 lease a separate lease for each of the 38 tracts.  Moreover, the summary judgment evidence
shows that the Gibsons received royalty payments under the terms of the 1957
lease.  The Gibsons= second cross-point is
overruled.

We reverse the trial court=s judgment finding that the Gibson #1 Unit was
formed in violation of the provisions of the lease and void ab initio and
remand for further proceedings by the trial court.  

 

W. G. ARNOT, III

CHIEF JUSTICE

March 28, 2002

Publish.  See TEX.R.APP.P.
47.3(b).

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J.











[1]Pursuant to the trial court granting the motions for
summary judgment of Tandem and Rainbow, they were dismissed from the suit and
are not parties to this appeal.





[2]We note that the 1957 lease contains several atypical
provisions, including Paragraph No. 4A.





[3]Contrary to their position that regardless of ownership
the lease should be treated as indivisible for pooling purposes, the Gibsons
now urge in both cross-points that the lease should be treated as divisible for
perpetuation by production. A party may also state as many separate claims or
defenses as he has, regardless of consistency and whether based upon legal or
equitable grounds or both. TEX.R.CIV.P. 48.