GUINN INVESTMENTS, INC., Appellant and Appellee,

v.

RIDGE OIL COMPANY and Bryan A. Woodward, Appellees and Appellants.

No. 2–00–055–CV.

Court of Appeals of Texas, Fort Worth.

April 11, 2002.

Rehearing Overruled May 23, 2002.

---

Harris, Finley & Bogle, P.C., Andrew D. Sims and Russell R. Barton, Fort Worth, Elton M. Montgomery, Graham, for Guinn Investments, Inc.

Stephens & Myers, L.L.P., Kerwin B. Stephens, Graham, Hayes, Johnson, & Owens, L.L.P., Glen E. Johnson, Austin,for Ridge Oil Company and Bryan A. Woodward.

### OPINION ON REHEARING

ANNE GARDNER, Justice.

### INTRODUCTION

The court en banc has considered Appellant's motion for rehearing in this case and

is of the opinion that the motion should be granted. We withdraw our March 15, 2001 opinion and judgment and substitute the following.

Guinn Investments, Inc. (Guinn) appeals from a summary judgment in favor of Ridge Oil Company, Inc. (Ridge Oil) and Bryan A. Woodward (Woodward) declaring that Guinn's oil and gas lease terminated. Guinn also appeals from the denial of its cross-motion for summary judgment, contending that the trial court erred in failing to apply the temporary cessation of production doctrine to prevent termination of its lease. Alternatively, Guinn complains that the trial court erred in denying its claims for damages based on fraud and tortious interference with contractual relations. Guinn further contends that the award of attorney's fees to Ridge Oil and Woodward was not equitable or just and that Guinn should, instead, be awarded its attorney's fees. Ridge Oil and Woodward appeal the trial court's judgment reducing the amount of their attorneys' fees as found by the jury. We reverse and render.

## FACTUAL BACKGROUND

The material facts are uncontested by the parties for the purposes of this appeal. In 1937, J.J. Grubbs and others, as lessors, leased the oil and gas estates of 320 acres of land in Young County, Texas to A.W. Kay. That oil and gas Lease (1937 Lease) included two separate, but adjoining, tracts of land. By assignments, Guinn acquired and, at all times relevant to this dispute, owned the oil and gas leasehold estate on one tract (Guinn tract). In 1996, Ridge Oil acquired from different lessors, and at all times relevant to the dispute, owned the oil and gas leasehold estate on the other tract (Ridge tract). (See Addendum following this opinion for a drawing of the tracts.)

The 1937 base Lease contained the following habendum clause:

It is agreed that this lease shall remain in force for a primary term of five (5) years from this date, and as long thereafter as oil or gas, or either of them is produced from said land by the lessee, or as long as operations are being carried on.

During the five-year primary term, two oil wells were brought in on the Ridge tract by predecessors to Ridge Oil. Producing wells were also drilled on the Guinn tract. Since 1950, when the lessees of the Guinn tract plugged and abandoned the last well on their tract, there has been no production on the Guinn tract. The two wells on the Ridge tract, however, continued to produce. It is undisputed that production in commercial quantities from the two wells on the Ridge tract kept the 1937 Lease in force, as to both the Ridge tract and the Guinn tract, at all times relevant to this suit at least until December 1, 1997.

In September 1997, Ridge Oil sought to acquire Guinn's leasehold interest in order to proceed with plans for a secondary recovery effort by waterflood of approximately 7,500 acres acquired by Ridge Oil. Ridge Oil's vice president, Woodward, met with Jim Guinn in Arlington and made an offer on behalf of Ridge Oil to purchase Guinn's interest in order to move forward on its waterflood plans. Guinn rejected the offer. Ridge Oil and Woodward admit that they then "elected to pursue the only course of action available which would enable us to secure [the Guinn tract]: termination of the 1937 lease." On December 1, 1997, Woodward instructed Ridge Oil's "pumper" to turn off the electrical switches to the two wells on the Ridge tract for ninety days and to conduct no activities on the Ridge tract during that period. The pumper complied, and oil production ceased.

On January 13, 1998, Woodward sent letters to the Ridge tract lessors clearly setting forth his intent to terminate the 1937 Lease—which had been held by production from the wells on the Ridge tract since 1937—by: (1) shutting in the wells on the Ridge tract for a period of 90 days; and (2) obtaining new leases for the Ridge tract from the lessors of that tract. By those letters, Woodward requested the new leases from Ridge Oil's lessors. The letters also explained that by terminating the Lease in this manner Ridge Oil could then take new leases from the mineral owners under the Guinn tract. The Ridge tract lessors complied by giving Ridge Oil new leases for their tract.

Additionally, it is undisputed that Ridge Oil voluntarily continued to pay royalties to its lessors as though production were continuing, during the 90 day period during which there was no production from the Ridge tract. On March 3, 1998, Ridge Oil flipped the switches back on, restoring electrical power to the wells on the Ridge tract. Those wells have continued to produce in paying quantities since that date.

## PROCEDURAL HISTORY

In February 1998, Guinn obtained a drilling permit from the railroad commission to drill on its tract. In early March, Guinn obtained a copy of the January 13, 1998 letter sent by Woodward to the Ridge Oil lessors explaining Ridge Oil's plans to terminate and acquire Guinn's interest. Confirming that the wells on the Ridge

tract had been shut-in for precisely that purpose, on March 9, 1998, Guinn sued Ridge Oil and Woodward for a declaratory judgment that the 1937 Lease had not terminated, and alternatively sought damages for fraud and tortious interference with Guinn's contractual relationship with its lessors.

Ridge Oil and Woodward filed a motion for partial summary judgment seeking a declaration that Guinn's leasehold interest terminated by cessation of production by Ridge Oil or, alternatively, by the release and surrender of Ridge Oil's interest by the taking of new leases from their own lessors on the Ridge tract. Ridge Oil and Woodward also sought dismissal of Guinn's claims of fraud and tortious interference. Guinn responded with its own cross-motion for partial summary judgment for a declaratory judgment that its leasehold interest had not terminated and, alternatively, for liability of Ridge Oil and Woodward based on fraud and tortious interference, leaving for trial the issues of damages.

Without stating the specific grounds upon which it was based, the trial court rendered judgment granting Ridge Oil's and Woodward's motion for partial summary judgment, and denying Guinn's motion for summary judgment and/or motion to reconsider, disposing of all the issues in the case except attorneys' fees.[1] Pursuant to section 37.009 of the Texas Civil Practice and Remedies Code the court allowed Ridge, Woodward, and Guinn to prove their attorneys' fees to a jury.[2] The trial

---

1. Section 37.009 of the civil practice and remedies code authorizes the recovery of attorneys' fees for declaratory relief actions. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). A party does not have to prevail to recover attorneys' fees in a declaratory judgment action. *Id.; Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex.1996).

2. The court submitted two questions to the jury: (1) the reasonable and necessary attorneys' fees for Ridge Oil and Woodward; and (2) the reasonable and necessary attorneys' fees for Guinn. The jury found a total of $245,895.82 of attorneys' fees for Ridge Oil and Woodward, and a total of $75,500 for Guinn. The judgment awarded Ridge Oil and Woodward attorney's fees of $54,895.82 less than that found by the jury.

court awarded Ridge Oil and Woodward their attorneys' fees, but conditioned Guinn's recovery of attorneys' fees on its success in ultimately prevailing in the suit. The trial court's final judgment declared the oil and gas lease terminated, denied Guinn's claims of fraud and tortious interference, and awarded attorneys' fees to Ridge Oil and Woodward in the amount of $191,000.

## ISSUES ON APPEAL

Guinn raises four issues on appeal: (1) the trial court erred in granting Ridge Oil's and Woodward's motion for partial summary judgment; (2) the trial court erred in denying Guinn's motion for partial summary judgment and/or motion to reconsider; (3) the trial court. erred in awarding attorneys' fees to Ridge Oil and Woodward under the Uniform Declaratory Judgments Act; and (4) the trial court erred in denying attorneys' fees to Guinn under the Uniform Declaratory Judgments Act. By their appeal, Ridge Oil and Woodward complain that the trial court abused its discretion by reducing the jury's finding of reasonable and necessary attorneys' fees.

## STANDARD OF REVIEW

■ In a summary judgment appeal, the issue is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant; all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d

217, 223 (Tex.1999); *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

■ In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Rhone–Poulenc, Inc.*, 997 S.W.2d at 223; *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.*, 391 S.W.2d at 47.

■ When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. The reviewing court should render such judgment as the trial court should have rendered. *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex.1997).

## LEGAL ANALYSIS

### I. Termination of Guinn's Leasehold Interest

Guinn contends that the trial court erred in granting Ridge Oil's and Woodward's motion for partial summary judgment and in denying Guinn's motion for partial summary judgment and/or motion to reconsider. Guinn offers five grounds supporting these general issues: (1) the temporary cessation of production doctrine prevented the Lease from terminating; (2) the new leases covering the Ridge tract did not terminate Guinn's leasehold interest; (3) a

genuine issue of material fact existed as to whether Ridge Oil continued "operations" on the Lease after December 1, 1997; (4) a genuine issue of material fact existed as to whether Guinn conducted "operations" on the Lease to prevent its termination; and (5) Ridge Oil and Woodward failed to prove that production ceased under the 1937 Lease.

### A. The Temporary Cessation of Production Doctrine

■ With respect to the secondary term of an oil and gas lease, the title conveyed to a lessee is a fee simple determinable. *Stephens County v. Mid–Kansas Oil & Gas Co.*, 113 Tex. 160, 254 S.W. 290, 295 (1923). Oil and gas lease language usually provides that the lease may be kept alive after the primary term only by production in paying quantities or by a savings clause such as a shut-in royalty clause, continuous operations clause, or drilling operations clause. *Natural Gas Pipeline Co. of Am. v. Pool*, 30 S.W.3d 618, 626 (Tex.App.-Amarillo 2000, pet. granted). Historically, where there is no savings clause, cessation of production during the secondary term automatically terminates the lease. *Watson v. Rochmill*, 137 Tex. 565, 155 S.W.2d 783, 784 (1941).

■ To relieve the harshness of the automatic termination rule, Texas courts have held that, where there is no such express savings provision, a "temporary cessation of production" (TCOP) clause is "necessarily implied" in the lease. *Amoco Prod. Co. v. Braslau*, 561 S.W.2d 805, 808 (Tex.1978); *Midwest Oil Corp. v. Winsauer*, 159 Tex. 560, 323 S.W.2d 944, 946 (1959); *Watson*, 155 S.W.2d at 784. The strictness of the automatic termination rule is ameliorated by the TCOP doctrine where there is a temporary cessation of production "due to sudden stoppage of the well or some mechanical breakdown of the equipment used in connection therewith, or the like." *Amoco Prod. Co.*, 561 S.W.2d at 809–10; *Watson*, 155 S.W.2d at 784. The lessee is entitled to a reasonable time in which to remedy the cause of the temporary cessation and resume production. *Winsauer*, 323 S.W.2d at 947; *see also Cobb v. Natural Gas Pipeline Co. of Am.*, 897 F.2d 1307, 1309 (5th Cir.1990); *Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 315 (Tex.App.-Amarillo 2001, pet. filed).[3] The lessee must act diligently in obtaining renewed production. *Winsauer*, 323 S.W.2d at 947; *Watson*, 155 S.W.2d at 784; *Cobb*, 897 F.2d at 1312.

### B. Applicability of TCOP doctrine to non-operator lessee

■ Guinn contends the TCOP doctrine prevents termination of its leasehold interest by Ridge's Oil's and Woodward's conduct in temporarily ceasing production on the Ridge tract. Ridge Oil and Woodward respond that the TCOP doctrine does not apply because it was designed to benefit only an "operator lessee," not a leaseholder such as Guinn, whose interest is held only by production by other operators from wells of another tract under the same base lease.

To support their argument that the TCOP doctrine benefits only an operator lessee, Ridge Oil and Woodward point out that the purpose of the TCOP doctrine is to relieve determinable fee holders from the harsh realities of the automatic termination rule for operating lessees when

---

**3.** Absent an express time limit in the lease for continuous drilling operations or reworking operations, the rule of "reasonable temporary cessation" after the primary term applies. *Samano v. Sun Oil Co.*, 621 S.W.2d 580, 583 (Tex.1981). Since there is no express time limit in the lease in question, the decision of Ridge Oil to cease production for the period of 90 days had no legal effect except as it may be shown to have been "reasonable."

equipment breaks down and wells require repair, thus disrupting production. Ridge Oil and Woodward cite cases involving operator lessees. We find nothing in the cases cited by Ridge Oil and Woodward that precludes application of the doctrine to perpetuate other interests, as well as those of operator lessees.

In fact, the TCOP doctrine has been applied by Texas courts to perpetuate interests other than those of operator lessees. In *Winsauer*, the supreme court held that the TCOP doctrine applies to a term royalty interest. 323 S.W.2d at 947–48; *see also Amoco*, 561 S.W.2d at 809 (also applying TCOP doctrine to preserve overriding royalty interest). The supreme court reasoned that a term royalty interest, like a lessee's estate, is a determinable fee that continues during the secondary term only so long as oil or gas is produced. *Winsauer*, 323 S.W.2d at 948. The court saw no reason why the right to own and enjoy the royalty should not also continue in the event of a temporary cessation of production by the lessee operator, at least as long as the operator exercises diligence. *Id.*

Ridge Oil and Woodward have furnished us with no authority that discriminates between operator lessees and non-operator lessees in applying the TCOP doctrine, nor have we found any case justifying such a distinction. We likewise find no language in the 1937 Lease distinguishing between rights of holders of leasehold interests on that basis. To the contrary, the Lease expressly provides:

> It is agreed that this lease shall remain in force for a period of five (5) years from this date, and as long thereafter as oil or gas, or either of them, *is produced from said land* by the lessee, or as long as operations are being carried on. [Emphasis added.]

Nothing in that language requires production by a particular lessee on any particular tract within the leased premises in order to perpetuate the entire lease in the secondary term. Indeed, Texas law has long been settled that, unless superseded by express provisions in a lease, production from any one part of land included in an oil and gas lease will perpetuate an oil and gas lease beyond the primary term as to *all* tracts included in the lease. *Mathews v. Sun Oil Co.*, 425 S.W.2d 330, 333 (Tex.1968); *see also SMK Energy Corp. v. Westchester Gas Co.*, 705 S.W.2d 174, 176 (Tex.App.-Texarkana 1985, writ ref'd n.r.e.); *Orive v. Sun Oil Co.*, 346 S.W.2d 383, 384 (Tex.Civ.App.-San Antonio 1961, writ ref'd); *Cain v. Neumann*, 316 S.W.2d 915, 919 (Tex.Civ.App.-San Antonio 1958, no writ). None of the parties has cited a case from any jurisdiction directly addressing whether a lessee whose interest is held solely by production from another tract under the same lease may invoke the TCOP doctrine. So far as we can determine, the issue is one of first impression.

*Cain v. Neumann* involved an issue as to whether a lessee of a tract that was part of a larger tract covered by a lease could release and surrender its portion of the lease on which there was production of minerals in paying quantities and simultaneously take back a new lease, so as to destroy the interests of non-producing owners of interests held by the production under the base lease. 316 S.W.2d at 916. The San Antonio Court of Appeals held that the lessor and the lessee could not by agreement between themselves release and thereby destroy the interests of the non-producing interests. *Id.* at 918.

In *Cain*, it was undisputed that production continued on the portion of the lease attempted to be released. Writing for the majority in *Cain*, Justice Pope explained

that production was the event which continued the base lease in force past the primary term as to all lessees. *Id.* at 919. "The happening of the determining event, the cessation of production ... was not tied to nor dependent upon who ... would own the production." *Id.* To the contrary, his opinion continued, "in the instance of a lease of the type mentioned[,] production from any one of the tracts described in [the lease] serves to perpetuate the lease as to all." *Id.; see also Hillegust v. Amerada Petroleum Corp.,* 282 S.W.2d 892, 896 (Tex.Civ.App.-Beaumont 1955, writ ref'd n.r.e.) (holding that mineral estates vesting in two different persons was immaterial).

Additionally, as held in *Cain,* the identity of the owner of production is "unimportant" in perpetuating a lease, absent language expressly providing otherwise. 316 S.W.2d at 919. The only relevant inquiry regarding whether the lease is maintained in force is whether production on any part of the land described by the lease continues. *Id.* Likewise, here, production on the land covered by the 1937 base lease was the event that continued the lease in force past the primary term. *See id.* (quoting from lease using phrase "production *thereon* ") (emphasis added). Since production on any tract covered by the 1937 Lease perpetuated the lease as to all leasehold interests, we hold that the TCOP doctrine similarly inures to the benefit of non-producing leasehold interests such as Guinn's, to prevent termination of those interests based only on temporary cessation of production.

The argument that only operating lessees may take advantage of the TCOP doctrine would conflict with the long-settled Texas rule that leasehold interests may be held by production on other tracts, and would create an artificial distinction between the property interests conveyed by the habendum clause of an oil and gas.

lease. Moreover, holding that a non-operating lessee such as Guinn cannot avail itself of the TCOP doctrine would also discriminate between non-operating leaseholders and other holders of non-operating interests such as term royalty owners, who are entitled to take advantage of the TCOP doctrine. *See Winsauer,* 323 S.W.2d at 947 (holding that term royalty owner may invoke TCOP doctrine to prevent termination of interest). We do not believe it is an unjustifiable expansion of the doctrine to hold that the TCOP doctrine may be invoked to protect a lessee such as Guinn, who holds a lease by virtue of another lessee's production under the same lease.

## C. Operation of TCOP Doctrine Against Ridge Oil's Interest

Ridge Oil and Woodward next argue that Guinn and its assignors, as non-operating lessees, had ample opportunity to protect their own interest by drilling and producing on the Guinn tract but failed to do so for many years, being content to ride on "Ridge's production coattails." Ridge Oil and Woodward contend that invoking the TCOP doctrine under these circumstances to prevent termination of Guinn's leasehold interest would constitute an application of that doctrine "against the interests of [the] operator lessee." Specifically, they urge application of the TCOP doctrine under these circumstances would somehow obligate Ridge Oil and Woodward to continue to produce, contrary to their desire to voluntarily terminate their own lease, thereby creating an affirmative "duty" owed by an operating lessor to non-operating lessees.

We disagree that application of the TCOP doctrine in this case would result in the dire consequences predicted by Ridge Oil and Woodward. Guinn is not attempting to force Ridge Oil and Woodward to maintain production nor to prevent them

from voluntarily terminating or even abandoning their mineral estate should they wish to do so. In fact, this argument exposes the fallacy in their position. They are free to walk away from their own lease. However, the fact is that they are continuing to produce. They have not ceased production and do not wish to do so. They only made a pretext of ceasing production to acquire Guinn's interest.

After flipping the electrical switch for their wells off and then back on 90 days later, while continuing to pay royalties by agreement to their lessors in the interim to preserve their own leasehold estate, they have continued to produce from the same wells on the same tract as before. The only manner in which Guinn's arguments work against the interest of Woodward and Ridge Oil is by preventing them from carrying out their plan to terminate Guinn's interest and acquire it for themselves.

### D. Application of the TCOP doctrine to voluntary cessation

■ Ridge Oil and Woodward further argue that a voluntary cessation of production cannot be subject to the TCOP doctrine. Even if it were true that they wished to voluntarily cease production, their premise is incorrect, and we believe that their reliance upon *Watson*, 155 S.W.2d at 783, and *Scarborough v. New Domain Oil & Gas Co.*, 276 S.W. 331, 333 (Tex.Civ.App.-El Paso 1925, writ dism'd w.o.j.) is misplaced.

In *Watson*, the supreme court held that a lease terminated because (1) the lessee's cessation of production was not temporary where there was no production for two years and seven months; (2) the cessation was the result of a decision by the lessee not to produce oil because of the conditions of the economy which made continued production unprofitable; and (3) the cessation was not caused by mechanical breakdown

or other condition associated with the well or equipment. *Id.* at 783–84. The court, however, did not specify that one reason was determinative of its decision. *See Krabbe*, 46 S.W.3d at 315 (citing a plethora of cases, including *Watson*, that end the list with the words "or the like," and do not put any specific weight on any one condition being dispositive).

In *Scarborough*, production ceased from a gas well for approximately three and a half months as the result of the collapse of the well casing, at the end of which time a producing oil well was brought in. 276 S.W. at 333. The lessees expended a great amount of money attempting to bring in a gas well and subsequently did so. *Id.* The court of appeals held that the cessation of production was temporary and did not terminate the lease where the cause of the cessation was "necessarily unforeseen and unavoidable." *Id.* at 336. Although *Scarborough* and some other cases have referenced foreseeability and avoidability of production, even Ridge Oil and Woodward acknowledge that those references have merely been descriptive of the particular facts involved and that foreseeability and avoidability are not essential elements of the TCOP doctrine. *See Krabbe*, 46 S.W.3d at 319–20 (concluding that foreseeability and avoidability are not elements of the TCOP doctrine).

Neither *Watson* nor *Scarborough* involved the applicability of the TCOP doctrine to a voluntary cessation of production, nor have subsequent cases imposed a limitation that a temporary cessation must be involuntary. To the contrary, voluntary cessations of production have been held excused under the TCOP doctrine. *See, e.g., Amoco Prod. Co.*, 561 S.W.2d at 806–07 (applying TCOP doctrine where production was shut down in one zone to rework well to obtain production in another zone);

*Winsauer,* 323 S.W.2d at 944–45 (applying TCOP doctrine where production was suspended due to litigation in two lawsuits as well as mechanical breakdown); *Casey v. W. Oil & Gas Inc.,* 611 S.W.2d 676, 678–79 (Tex.Civ.App.-Eastland 1980, writ ref'd, n.r.e.) (applying TCOP doctrine where old gas contract had expired and gas purchaser disconnected pipeline); *Sunray DX Oil Co. v. Texaco, Inc.,* 417 S.W.2d 424, 428 (Tex.Civ.App.-El Paso 1967, writ ref'd, n.r.e.) (recognizing that matters such as "reworking operations" as well as other things are bound to cause temporary cessations of production).

**E. Application of TCOP doctrine to cessation caused by third party**

■ With its evolution over time, the TCOP doctrine has not been limited to involuntary cessations of production nor even to physical or mechanical causes. *See Krabbe,* 46 S.W.3d at 318; Bruce M. Kramer, *The Temporary Cessation Doctrine: A Practical Solution to an Ideological Dilemma,* 43 Baylor. L.Rev. 519, 529 (1991). Rather, we believe the inquiry must focus on whether a stoppage is temporary, based on the facts of the particular case, or whether, instead, the operator intended the well to cease production for an "indefinite" length of time. *Wilson v. Holm,* 164 Kan. 229, 188 P.2d 899, 907 (1948). The *Wilson* court states:

> We believe proper construction of such an instrument requires the conclusion that if for any reason there is a cessation of production of oil in paying quantities on the land covered by its terms the owners of the minerals in place are required to move promptly and by their efforts actually establish that such ces-

sation, regardless of its cause, is temporary, not permanent.[4]

188 P.2d at 907.

Here, it is undisputed that the cessation was intended to be temporary and that operations were restored within 90 days as planned. We believe that the TCOP doctrine is flexible enough to be adjusted to apply to the circumstances in this case to avoid a clearly unjust result. *See Frost v. Gulf Oil Corp.,* 238 Miss. 775, 119 So.2d 759, 762 (1960) (holding only "fair and just" rule was to hold lease continued in force unless period of cessation was for unreasonable length of time).

Specifically, the TCOP doctrine has been applied to protect a lessee's or royalty owner's interest where cessation of production was, as in this case, caused by conduct of a third party. *See, e.g., Winsauer,* 323 S.W.2d at 945–48 (holding subsequent operator acted diligently and its rights not terminated despite prior operator's conduct in shutting down well); *Krabbe,* 46 S.W.3d at 319 (holding TCOP doctrine applied as to cessation of production caused by litigation over whether gas contract was renewed for one well and refusal by purchaser to take gas from second well); *Casey,* 611 S.W.2d at 679 (applying TCOP doctrine to excuse cessation of production where well was disconnected by third-party gas purchaser); *see also Wilson,* 188 P.2d at 907 (recognizing that a temporary cessation of production could be caused by connivance with owners of other mineral interests).

Moreover, the case law supports application of the TCOP doctrine when viewed from Guinn's standpoint, rather than that of Ridge Oil. It is undisputed that Guinn obtained a drilling permit from the Railroad Commission on February 27, 1998 for

---

4. *See also Beatty v. Baxter,* 208 Okla. 686, 258 P.2d 626, 628 (1953) (holding cessation of

twenty-one months was not abandonment of well but temporary cessation of production).

the purpose of drilling on the Guinn tract. Guinn did not cause the cessation of production and only learned about it on March 4, 1998 "from Mrs. Rutherford, ... attempting to pay surface damages in the course of gaining entry for the drilling of a well on my company's tract." The cessation was unforeseeable, unavoidable, and involuntary as to Guinn. *See Winsauer,* 323 S.W.2d at 945 (holding subsequent operator acted diligently and its rights were not terminated although prior operator shut down well); *Casey,* 611 S.W.2d at 679–80 (holding TCOP doctrine applied where cessation caused, in part, by disconnection of well by gas purchaser).

We hold that the TCOP doctrine applies to excuse the temporary cessation of production on the Ridge tract by Ridge Oil and Woodward, so as to preserve Guinn's leasehold interest held by production from that tract. Because it is uncontradicted that production on the Ridge tract was restored by Ridge Oil within a short time, we are not faced with an issue of whether it was necessary for Guinn to act with diligence in attempting to obtain renewed production within a reasonable time.[5] *See Cobb,* 897 F.2d at 1312 (holding lessee must exercise diligence in resuming production); *Winsauer,* 323 S.W.2d at 947 (holding lessee entitled to reasonable time to resume production). We hold that the TCOP doctrine applies, as a matter of law, to prevent termination of Guinn's leasehold interest by the temporary cessation of production on the Ridge tract.

[5.] Remand for determination of those issues as genuine issues of material fact might be warranted had Ridge Oil actually abandoned its lease and plugged its wells, requiring Guinn to begin operations on its own tract.

[6.] In *Sunac,* the pertinent provision reads:
There shall be no obligation, express or implied on the part of Assignee, its successors or assigns, to keep said lease in force

## F. Effect of Surrender or Release of Ridge Oil's Lease

■ Ridge Oil and Woodward also argue that they effected a release of the 1937 Lease by entering into new leases with Ridge Oil's own lessors, and that the production from the Ridge tract after March 3, 1998 must be considered as under the new lease, rather than inuring to Guinn's benefit to preserve its interest under the 1937 Lease. Ridge Oil and Woodward rely upon *Sunac Petroleum Corp. v. Parkes,* 416 S.W.2d 798, 802–03 (Tex.1967) (holding that a lessee may release its interest in a lease and take a new lease, and thereby "washout" the interest of an overriding royalty interest owner under the old lease) and *Sasser v. Dantex Oil & Gas, Inc.,* 906 S.W.2d 599, 605–06 (Tex.App.-San Antonio 1995, writ denied) (also involving washout of overriding royalty interest).

We find both *Sunac* and *Sasser* distinguishable. Both of those cases recognized the rule prohibiting destruction of overriding royalty interests by attempted washout transactions constituting agreements between holders of mineral interests and their lessors to take new leases. The decisions in both of those cases upheld agreements terminating overriding royalty interests. However, both cases involved leases containing language expressly allowing the lessee to surrender or release the lease from which the overriding royalty interest was reserved. *Sunac,* 416 S.W.2d at 804; *Sasser,* 906 S.W.2d at 603 n. 2.[6] The 1937 Lease in this case contains

by payment of rentals or drilling or development operations, and Assignee shall have the right to surrender all or any part of such leased acreage without the consent of Assignor.
416 S.W.2d at 804.
In *Sasser,* the court noted that a subsequent 1990 Lease terminated a 1974 Lease because supporting affidavits specifically noted that

no similar surrender clause or partial release clause language permitting a release of any other interest.[7] Moreover, the overriding royalty interests in *Sunac* and *Sasser* were created by and dependent upon the continued existence of the leases. The overriding royalty interests thus were extinguished when the leases were terminated by surrender or release. Here, the summary judgment evidence establishes two separate leasehold interests even though those interests were created in the same lease. It is undisputed that Ridge Oil's lessors were not the lessors of the Guinn tract. Ridge Oil and Woodward have not explained how their surrender of their interest under the 1937 Lease and their taking of new leases covering the Ridge tract could terminate Guinn's separate leasehold interest under the 1937 Lease, when neither Ridge Oil nor its lessors owned any interest in the Guinn tract.

As in *Cain*, the 1937 lease here had no surrender clause or partial release clause. The court held in *Cain* that a lessor and lessee could not, by agreement between themselves, release and destroy the rights of third persons who owned under the same base lease. *Id.* at 919, 921. Those rights were unaffected so long as production continued in paying quantities. *Id.* *Cain* involved a lessee's pretextual attempt to surrender and release its interest under a lease, taking a new lease from the owner, while at the same time continuing production as though the original lease had not terminated. *Id.* at 919. As to the problem that production was continuing in paying quantities, the lessee in *Cain* made a similar argument to that made by Ridge Oil here: that production is no longer under the old lease because it is under the

new lease. *Id.* at 920. Rejecting that argument, the majority in *Cain* stated, in words equally applicable here: "It is ... an example of the ancient phrase that actions often speak so loudly that the words of the actor cannot be heard. The conduct of this lessee was absolutely inconsistent with either an actual surrender or an abandonment." *Id.* at 919 (citation omitted).

While *Cain* involved the pretextual surrender and release by a lessee of its existing lease in exchange for a new lease while production continued, this case involves a pretextual surrender and alleged release in exchange for a new lease while production ceased temporarily, resuming after the new lease was obtained. *Id.* Is there any difference? We think not. In both cases, the purpose was to destroy the rights of others under the base lease. The Fifth Circuit Court of Appeals has recognized *Cain* as having continued viability, noting that the facts in that case "suggested that the defending parties intentionally harmed the overriding royalty interest owner for their unjustifiable benefit." *In the Matter of GHR Energy Corp.*, 979 F.2d 40, 41 (5th Cir.1992) *cert. denied,* 507 U.S. 1042, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993). Under those circumstances, the court in *Cain* held that the parties could not terminate the original lease and that the overriding royalty interest survived. *Cain,* 316 S.W.2d at 919.

The Fifth Circuit in *GHR Energy Corp.* did not apply *Cain* to invalidate a surrender and taking of a new lease where the lease before it contained an express surrender clause and no facts suggested impropriety by the lessee. *GHR Energy*

---

the term "release" was used in creating the lease. 906 S.W.2d at 603 n. 2.

**7.** For the same reason, we are reluctant to agree that *Sunac* overruled *Cain,* as suggested

by the San Antonio Court of Appeals in *Sasser.* 906 S.W.2d at 607. The lease in *Cain* contained no surrender clause or release clause. 316 S.W.2d at 920–21.

*Corp.,* 979 F.2d at 41. But the court expressly noted that a different result might well have been reached, even with a surrender clause, if the facts had "suggested that [the lessee] surrendered its interest in the lease to destroy the rights of the overriding royalty interest owner." *Id.*

It is undisputed that Ridge Oil surrendered its leasehold interest to intentionally destroy and acquire the leasehold rights of Guinn, and there is no surrender or release provision in the 1937 Lease allowing such a transfer. We believe the holding in *Cain* applies. We hold that, as a matter of law, Ridge Oil's surrender of its lease and the taking of a new lease from its lessors did not terminate Guinn's leasehold interest.

For the reasons stated, we hold that the trial court erred in granting summary judgment in favor of Ridge Oil and Woodward and in denying Guinn's motion for summary judgment, and that Guinn established its right to a declaratory judgment, as a matter of law, that its leasehold interest did not terminate. We sustain Guinn's first and second issues.

Because we have held that Guinn is entitled to a declaratory judgment on the ground that its leasehold interest did not terminate either by the cessation of production on the Ridge tract or by the surrender or release of the Ridge lease, it is unnecessary to consider Guinn's alternative arguments that genuine issues of fact were raised as to whether operations continued or production ceased on the Ridge tract. Similarly, it is unnecessary to consider Guinn's further issues that it is entitled to summary judgment as to liability of Ridge Oil and Woodward for fraud or tortious interference with contractual relationship, with a remand for trial on damages because Guinn's causes of action for damages for fraud and tortious interfer-

ence were pled solely in the alternative to its action for a declaratory judgment.

## II. Attorney's Fees

In its third issue, Guinn argues that it was inequitable and unjust for the court to award Ridge Oil and Woodward attorneys' fees under the Uniform Declaratory Judgments Act, and in its fourth issue argues that it should be awarded attorneys' fees under the act. In its sole issue on appeal, Ridge Oil and Woodward argue that the trial court abused its discretion by reducing the amount of attorneys' fees awarded to them by the jury from $245,895.82 to $191,000.

Because we are reversing the summary judgment in favor of Ridge Oil and Woodward, we sustain Guinn's complaint of the award of attorney's fees to Ridge Oil and Woodward, and reverse the judgment awarding attorney's fees to those parties since the award is conditioned upon those parties prevailing on appeal. As we have sustained Guinn's issue on the matter of Ridge Oil's and Woodward's attorney's fees, it is unnecessary to address those parties' sole issue complaining of the reduction in amount of those fees.

Finally, we also sustain Guinn's complaint that this court should award it attorney's fees as the prevailing party on appeal. The jury determined Guinn's attorney's fees at $59,500 for trial court representation and $8,000 for an appeal taken to a court of appeals. The jury also awarded further sums of $4,000 if a petition for review was filed with the Texas Supreme Court and an additional $4,000 if that court grants a petition for review. The trial court conditioned the recovery of appellate fees on the Plaintiff's/Appellant's prevailing after all appeals have been exhausted. Since we reverse and render for Guinn, having found that the leasehold interest did not terminate, it is only equita-

ble and just that we award Guinn its attorney's fees as determined by the jury. *See Ice Bros., Inc. v. Bannowsky,* 840 S.W.2d 57, 63 (Tex.App.-El Paso 1992, no writ) (holding, upon reversal and rendition in a declaratory judgment case involving a lease termination, it was only equitable and just that the attorney's fees initially awarded to the trial court winner be set aside and the appellate court winner be awarded fees in accordance with the jury's finding). The judgment of this court will provide for recovery of attorney's fees by Guinn as awarded by the jury.

## CONCLUSION

Having sustained Guinn's issues complaining that the trial court erred in granting the motion for summary judgment and in denying its motion for summary judgment, as well as its complaints as to the award of attorney's fees to Ridge Oil and Woodward, we reverse the judgment of the trial court and render judgment in favor of Guinn that its leasehold interest did not terminate upon the cessation of production on December 1, 1997, nor upon the release and surrender of the Ridge lease. We reverse the trial court's award of attorney's fees to Ridge Oil and Woodward and render judgment that Guinn recover from Ridge Oil and Woodward its reasonable attorney's fees of: $59,500 for trial court representation, $8,000 for the appeal to this court of appeals, $4,000 if a petition for review is filed with the Supreme Court of Texas, and an additional $4,000 if the Supreme Court of Texas grants a petition for review.